## SCOTT v. CITY OF INDIANAPOLIS.

[No. 10,785.   Filed April 21, 1921.]

MUNICIPAL CORPORATIONS.—*City Hospital.—Negligence.—Liability.*—One injured by falling into an elevator shaft in a city hospital negligently left unguarded cannot maintain an action for his injuries, where the maintenance of the hospital was an exercise of a governmental function by the city.

From Marion Superior Court (A1,059); *W. W. Thornton,* Judge.

Action by Lula Scott against the City of Indianapolis. From judgment for defendant, the plaintiff appeals. *Affirmed.*

*Turner, Merrell & Locke,* for appellant.

*Samuel Ashby, Thomas D. Stevenson, Harry E. Yockey* and *Dixon H. Bynum,* for appellee.

ENLOE, J.—Complaint by appellant for damages for personal injury alleged to have been sustained by reason of the negligence of appellee. The complaint was in one paragraph to which a demurrer was sustained and the appellant electing to abide such ruling, judgment was rendered against her for costs, from which judgment, this appeal is prosecuted.

It is alleged in said complaint that on April 3, 1917, the said city was maintaining a certain hospital, known as the City Hospital; that it had established and was maintaining said hospital under authority of the statutes of the State of Indiana; that in said hospital building was an elevator and elevator shaft; that the bottom of said elevator shaft was four or five feet below the level of the first floor of the first story of said hospital; that said elevator shaft was unskillfully constructed and negligently maintained in this, that when the elevator was above the first floor, an open space was left between said elevator shaft and the adjoining room in said hos-

pital, with no gate, guard, or other protection so placed, as to keep and prevent any person from walking into and falling into said elevator pit; that plaintiff had no knowledge of such dangerous condition; that while in said building, on said day aforesaid, and while seeking to find the "office" of said hospital, she went into a poorly lighted room, and stepped into and.fell into said pit, whereby she was injured.

The averments sufficiently charge negligence, provided this action, under the facts alleged, can be maintained.

In the case of *Benton* v. *Trustees* (1885), 140 Mass. 13, 1 N. E. 836, 54 Am. Rep. 436, which was an action for damages sustained by falling on a stairway of a hospital, the court said: "The trustees are a body created for the performance of a duty, which, under the authority of the statute, the city of Boston has assumed for the benefit of the public, and from the performance of which no profit or advantage is derived either by the trustees or the city." The court held that the action could not be maintained.

In *City of Richmond* v. *Long's Admr.* (1867), 17 Grat. (Va.) 375, 94 Am. Dec. 461, which was an action for damages, on account of the loss of the life of a slave being treated at the city hospital, and whose life was lost because of the alleged negligence of the hospital attendants, the court said: "A kindred exemption, and one directly relevant to the present issue, is extended, by virtue of the same principle, to municipal corporations, as constituting a part of the government of the country. This proposition in its terms points to an important distinction. The functions of such municipalities are obviously two-fold; first, political, discretionary and legislative, being such public franchises as are conferred upon them for the government of their inhabitants and the ordering of their public officers, and to be

exercised solely for the public good rather than their special advantage; and secondly, those ministerial, specified duties, which are assumed in consideration of the privileges conferred by their charter. Within the sphere of the former, they are entitled to this exemption; inasmuch as the corporation is a part of the government to that extent, its officers are public officers, and as such entitled to the protection of this principle; but within the sphere of the latter, they drop the badges of their governmental offices and stand forth as the delegates of a private corporation in the exercise of private franchises and amenable as such to the great fundamental doctrine of liability for the acts of their servants."

In the case of *Murtaugh* v. *City of St. Louis* (1869), 44 Mo. 479, the plaintiff was a non-paying patient in the city hospital, and while such suffered injuries, alleged to have been caused by negligence of officials and servants. In passing upon the question before it the court said: "The general result of these adjudications seems to be this: where the officer or servant of a municipal corporation is in the exercise of a power conferred upon the corporation for its private benefit, and injury ensues from the negligence or misfeasance of such officer or servant, the corporation is liable, as in the case of private corporations or parties; but when the acts or omissions complained of were done or omitted in the exercise of a corporate franchise conferred upon the corporation for the public good, and not for private corporate advantage, then the corporation is not liable for the consequences of such acts or omissions on the part of its officers and servants."

In the case of *Tollefson* v. *City of Ottawa* (1907), 228 Ill. 134, 81 N. E. 823, 11 L. R. A. (N. S.) 990, the court, speaking with reference to a hospital which had been established by the said city, said: "If the pur-

pose be charitable, then the city is not liable for the negligent acts of its employees in the institution. If, on the other hand, the purpose is to provide for the general health and welfare and to provide for suppressing and preventing the spread of contagious or other diseases, the statute authorizing the city to acquire and maintain the hospital must be regarded as an exercise of the police power, which comprehends the making of and enforcement of all such laws, ordinances and regulations as pertain to the comfort, safety, health, convenience, good order and welfare of the public. A city is not liable for the negligent acts of its agents or servants engaged in executing, enforcing or giving effect to its police ordinances and regulations."

In the case of Evans v. City of Kankakee (1907), 231 Ill. 223, 83 N. E. 223, 13 L. R. A. (N. S.) 1190, the plaintiff brought her action to recover damages occasioned by the alleged negligent conduct of the agents and servants of said city, in confining a person afflicted with smallpox in the city calaboose, which was a room in the same building in which plaintiff was employed as a telephone operator, in the telephone exchange of said city. The court, in passing upon the matter presented, said: "We think it clear, therefore, that the establishment and maintenance of a city calaboose falls within the proper exercise of the police power of a city, and that a city is not liable in an action on the case for damages for the wrongful or negligent acts of its police officers or board of health in the management of a calaboose or the detention of persons confined therein, even though such person be afflicted with small-pox, and persons who work or reside near the calaboose contract said disease."

The case of Lynch v. North Yakima (1905), 37 Wash. 657, 80 Pac. 79, 12 L. R. A. (N. S.) 261, as to one of the causes of action attempted to be stated was very

similar to the Evans case, *supra*, and the holding of the court was in harmony with that in the Evans case. .

In the case of *Butler* v. *Kansas City* (1916), 97 Kas. 239, 155 Pac. 12, L. R. A. 1916D 626, Ann. Cas. 1918D 801, the plaintiff had been confined in a pesthouse, he being afflicted with smallpox; it was alleged that the authorities had negligently allowed the floor of said building to become and remain out of repair, whereby the plaintiff sustained an injury to his foot, resulting in blood poison. The court in passing upon the question presented said: "The duty of a municipal corporation to conserve the public health is governmental, and it is not liable for injuries inflicted while performing such duty."

The case of *Ernst* v. *City of West Covington* (1903), 116 Ky. 850, 76 S. W. 1089, 63 L. R. A. 652, 105 Am. St. 241, 3 Ann. Cas. 882, involved the negligence of the school authorities, in permitting the playgrounds connected with a certain school building to become in a dangerous condition, whereby, as alleged, the plaintiff suffered serious injuries. It was held that there could be no recovery of damages.

The case of *Twyman's Admr.*, v. *Board, etc.* (1904), 117 Ky. 518, 78 S. W. 446, 64 L. R. A. 572, 4 Ann. Cas. 622, was an action for damages based on the alleged negligent conduct of certain of the officers of the city of Frankfort, in exposing the plaintiff's decedent to inclement weather, at a time when he was afflicted with smallpox, thereby causing his death. It was held that there was, as against said city, no liability.

In *Summers* v. *Board of Commissioners* (1885), 103 Ind. 262, 2 N. E. 725, 53 Am. Rep. 512, it was said: "Where the duties delegated to officers elected by public corporations are political or governmental, the relation of principal and agent does not exist, and the maxim *respondeat superior* does not govern. * * * In pro-

viding for the care of the poor, a police power which resides primarily in the sovereignty is exercised, and neither the sovereign nor the local governing body to whom such a power is delegated is responsible for the misfeasance of its officers."

Under these authorities, and many more could be cited, we hold that the said demurrer was rightfully sustained. The judgment is affirmed.