[Civ. No. 5341. First Appellate District, Division One.—August 24, 1925.]

## MEYER LEVY, Petitioner, v. THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO, Respondent.

[1] INSURANCE LAW—INDEMNIFICATION OF HOSPITAL—ACCRUAL OF LIABILITY—RIGHT OF ACTION BY INJURED PATIENT.—Under a policy of indemnity insurance issued to a hospital corporation to protect it against loss from liability imposed by law for damages on account of bodily injury or death suffered by any patient at the hospital in consequence of any malpractice or negligent treatment by any person employed by the hospital, and which provides that the indemnity company "shall not be liable to pay any loss nor shall any action be brought against the company to recover under this policy until a final judgment shall have been recovered against the assured in a suit covered thereby," and, that in the event of the insolvency or bankruptcy of the assured and an execution on the judgment is returned unsatisfied, "the judgment creditor shall have a right of action to recover the amount of such judgment against the company to the same extent that the assured would have to recover against the company had the assured paid said judgment, but in no event shall the company's liability exceed the limits expressed in this policy," no liability will accrue as an enforceable claim against the indemnity company until the recovery of a final judgment against the hospital corporation; and no action can be maintained thereon by one who, by reason of the negligence of the hospital and its servants, has suffered bodily injuries while undergoing treatment as a patient.

[2] ID.—LIABILITY OF CHARITY.—A charity not otherwise subject to liability may not become liable by reason of the procurement of indemnity insurance by those administering it.

[3] ID.—CHARACTER OF HOSPITAL CORPORATION—EVIDENCE—PROCUREMENT OF INDEMNITY POLICY—INFERENCES.—The character of a hospital corporation, which is claimed to be a charitable organization, is to be determined not alone by the powers and purposes defined in its articles of incorporation, but also by the method of transacting the business of the hospital; and while as a general rule any facts having rational probative value would be admissible for that purpose, the act of the corporation in procuring a policy to protect it against loss from liability imposed by law for dam-

1. See 13 Cal. Jur. 989.
2. As to liability of privately conducted charity for personal injuries, note, 14 A. L. R. 572; 23 A. L. R. 923.

ages on account of bodily injury suffered by any patient at the hospital in consequence of any malpractice or negligent treatment by any person employed by the hospital, can be the basis for no reasonable inference other than that as a prudent trustee the corporation deemed such protection necessary and proper.

[4] CONTEMPT—REFUSAL TO PRODUCE WRITINGS—COMPETENCY OF EVIDENCE—INVALID ORDER—CERTIORARI.—The refusal of a witness to produce writings which would not be competent as evidence, or to answer questions not pertinent to the issues of the case, does not constitute contempt; and before a witness can be held to be in contempt, it must appear that the evidence sought to be adduced would be competent, relevant and material under such issues; and an order adjudging a witness guilty of contempt for his failure to produce such writings or to answer such questions is invalid, and may be reviewed on *certiorari*.

(1) 36 C. J., p. 1097, n. 63.    (2) 11 C. J., p. 377, n. 14.    (3) 11 C. J., p. 377, n. 14.    (4) 13 C. J., p. 26, n. 87.

PROCEEDINGS in Certiorari to review a judgment of the Superior Court of the City and County of San Francisco adjudging petitioner guilty of contempt. E. P. Shortall, Judge. Judgment annulled.

The facts are stated in the opinion of the court.

Chickering & Gregory for Petitioner.

Edwin V. McKenzie for Respondent.

CASHIN, J.—A proceeding to review a judgment of the Superior Court, in and for the City and County of San Francisco, adjudging petitioner Meyer Levy guilty of contempt of court, the facts as shown by the petition being as follows: :

An action was commenced by Mae Kilroy Kane against Mount Zion Hospital, a corporation, and others to recover damages for bodily injuries suffered by plaintiff on June 22, 1923, alleged to have been caused by the negligence of the corporation and its servants in the care and treatment of plaintiff while a patient in the hospital conducted by the corporation. The corporation answered the complaint, denying negligence, and as a further defense alleged that

4.   See 5 Cal. Jur. 908, 910; 6 R. C. L. 498.

at all the times mentioned in the complaint it was organ-
ized and existed solely for charitable and nonprofit purposes;
that the hospital referred to in the complaint was at all the
times mentioned therein operated solely for such purposes;
that the facts alleged were known to plaintiff and her hus-
band, who was joined as a party plaintiff in the action, at
the time plaintiff entered the hospital; that all the servants
of defendant therein were selected with due care, and that
at no time did defendant have reason to believe that its ser-
vants were otherwise than careful and competent. Whether
the services rendered or to be rendered to plaintiff were or
were not gratuitous does not appear from the pleadings.

Thereafter plaintiff gave notice to defendants of her in-
tention to take the deposition of petitioner, who was then
the secretary of the corporation defendant, before respondent
Superior Court, the notice being accompanied by an affidavit
showing that the proceeding was one within the provisions
of section 2021 of the Code of Civil Procedure. A subpoena
was issued and served upon petitioner, requiring his appear-
ance before the court at a time fixed, and further requiring
him to bring into court a certain policy of indemnity insur-
ance, together with all certificates and indorsements attached
thereto, said policy being numbered 1466440, dated March
4, 1920, and issued by the Fidelity & Casualty Company of
New York to defendant corporation. Petitioner appeared, as
required by the subpoena, but, on the advice of counsel
representing the corporation defendant, refused to answer
questions asked by counsel for plaintiff, though directed
so to do by the court, as to whether the witness had brought
with him the policy described in the subpoena, whether the
corporation carried a policy of indemnity insurance which
insured it against the consequences of the negligent acts
of its employees, and as to whether the corporation carried
a policy in the company above named, a purported copy of
which was shown to the witness and which copy is set forth
in the order adjudging petitioner guilty of contempt of
court; and refused, in response to the demand of counsel
and the order of the court, to produce the original of the
purported copy of the policy mentioned above. To the ques-
tions asked and the demands for the production of the policy
counsel for defendant corporation interposed the objections
that the questions were, and the evidence sought to be elicited

would be, incompetent, irrelevant and immaterial; and it is contended by counsel for petitioner in this proceeding that petitioner could not be adjudged guilty of contempt of court for his failure to answer questions subject to such an objection, or for his failure to produce papers or documents not pertinent to the issues in the case, and that the court acted without jurisdiction in making such order.

As stated by counsel for plaintiff at the time, the purpose of the inquiry was to show that the original of the purported copy made a part of the record herein existed; that it insured defendant against the consequences of the negligent acts of its employees, and that the purported copy was a true copy thereof.

[1] The copy mentioned was in form a policy of indemnity insurance issued by the company above named, dated March 4, 1920, and which, in consideration of the maximum premium therein mentioned, by its terms indemnified Mount Zion Hospital, a corporation, against loss from liability imposed by law for damages on account of bodily injuries or death suffered by any patient or patients at the hospital of the assured in consequence of any malpractice, error or mistake made within the hospital in the giving of medical, surgical or hospital treatment by any person employed by the assured in the giving of such treatment, and further provided as follows: "The company shall not be liable to pay any loss nor shall any action be brought against the company to recover under this policy until a final judgment shall have been recovered against the assured in a suit covered thereby," and that "The insolvency or bankruptcy of the assured shall not release the company from any payment for which it would otherwise be liable under this policy, and if such insolvency or bankruptcy shall occur and an execution on a judgment recovered in a suit against the assured covered by this policy is returned unsatisfied, the judgment creditor shall have a right of action to recover the amount of such judgment against the company to the same extent that the assured would have to recover against the company had the assured paid said judgment, but in no event shall the company's liability exceed the limits expressed in this policy." Attached to the copy above mentioned was a purported indorsement by the insurer continuing the policy in force from March 4, 1923, to March 4, 1924.

Under a policy containing the above provisions no liability would accrue as an enforceable claim against the insurer until the recovery of a final judgment against the insured; and no action by plaintiff thereon could be maintained. (Civ. Code, sec. 2778, subd. 2; *Treloar* v. *Kiel et al.,* 36 Cal. App. 159 [171 Pac. 823]; *Terry* v. *Southwestern Building Co.,* 43 Cal. App. 372 [185 Pac. 212]; *Fernandez* v. *Tormey,* 121 Cal. 518, 519 [53 Pac. 1119].)

It is urged by counsel for respondent that assuming the allegations as to the character and purposes of defendant corporation to be true, the rule of exemption from liability for the negligent acts of the employees of a charity has not been adopted as the rule in California, citing *Stewart* v. *California Medical etc. Assn.,* 178 Cal. 418, 423 [176 Pac. 46]. With that question, however, we are not here concerned, as the facts sought to be proved by plaintiff would be relevant and material only on the assumption that the character and purposes of defendant corporation are material elements in the case. If the latter be immaterial, then the fact of the existence of the policy in question is also immaterial, the only purpose, if any, for which the policy would be competent and relevant being as evidence tending to prove that the character and purposes of the corporation were other than those alleged, or as a fact rendering any rule of nonliability otherwise available as a defense inapplicable, it not being contended that the policy would be competent as evidence that the corporation or its servants were guilty of the negligence alleged in the complaint.

It is further contended that, assuming the corporation to be a charity as alleged, the policy in question protects the trust fund against depletion, and that therefore the reason for the rule, if any, exempting the corporation from liability and based upon the fact of the trust fund, fails.

In jurisdictions where the rule exempting charities from liability has been adopted, and the reason for the rule based upon the trust fund theory, it is held that the charity, whether incorporated or not, is a trustee, and is bound to apply the funds or property in furtherance of the charity and not otherwise, and that the law will not permit the trustee to deplete the fund set aside for charity by using it in paying damages caused by the acts of those engaged in administering the trust. (*Adams* v. *University Hospital,*

122 Mo. App. 675 [99 S. W. 453]; *Gable* v. *Sisters of St. Francis,* 227 Pa. 254 [136 Am. St. Rep. 879, 75 Atl. 1087]; *Roosen* v. *Peter Bent Brigham Hospital,* 235 Mass. 66 [14 A. L. R. 563 [126 N. E. 392].)

If a liability may be created or an exemption waived by the acts of the trustee of a charity in procuring and accepting the promise of a third person to make good the losses following such liability or waiver, and the trustee thus allowed to accomplish indirectly that which is not permitted to be done directly, the protection afforded by the rule stated would be destroyed. **[2]** No authorities holding in accordance with the argument of counsel in this behalf have been called to our attention; and it is our opinion that the theory that a charity not otherwise subject to liability may become liable by reason of the procurement by those administering it of indemnity insurance cannot be supported in principle.

It is further contended that the policy would be admissible as evidence tending to show the character of the corporation and the manner of conducting the hospital.

**[3]** The character of the defendant is to be determined not alone by the powers and purposes defined in its articles of incorporation but also by the method of transacting the business of the hospital. (*Stewart* v. *California Medical etc. Assn., supra.*) As a general rule any facts having rational probative value would be admissible for that purpose; and it is urged that the policy would be relevant as the basis for certain inferences in that the act of the officers of the corporation in procuring the insurance policy would be evidence of their consciousness that defendant is not a charity as alleged, and that the hospital was not being conducted for such purposes, but for purposes making necessary or proper the procurement of insurance protecting the corporation from the possible legal consequences of its conduct, and that from such consciousness might be inferred the ultimate fact sought to be shown.

As stated in Wigmore on Evidence, section 267 et seq., there is a large class of cases where consciousness is of service evidentially as forming a second step of inference to some other fact which forms the ultimate object of proof.

Conduct is competent and relevant as evidence of consciousness of guilt in criminal proceedings; and the principle

has been applied in cases where questions of ownership or employment were in issue, and wherein the fact of the procurement of indemnity insurance was admitted as evidence relevant to such issues. (*Perkins* v. *Rice*, 187 Mass. 28 [72 N. E. 323]; *Davis* v. *North Carolina Shipbuilding Co.*, 180 N. C. 74 [104 S. E. 82].)

In the numerous cases where, from the act of improving the condition of places and objects after the occurrence of an injury alleged to have been caused by such condition, an inference of negligence has been sought to be drawn on the assumption that such act would indicate a consciousness or belief that the injury was caused by the negligence of the owner, such evidence has been generally rejected, the rule of exclusion being applied on the ground that the supposed inference from the act was not the plain and most probable one; and that while on the theory of relevancy the inference sought to be drawn from such fact was fairly possible, and the fact would thus be brought within the general rule as to admissibility, by a rule of policy based upon the possibility that greater weight might be given thereto than could be reasonably justified, or that the fact might be considered as supporting issues to which it would not be relevant, the evidence should be excluded.

A similar situation is presented in the instant case in that while the evidence offered has indirectly a degree of probative value on the issue as to the character and purposes of defendant corporation, the ultimate conclusion sought to be drawn therefrom is not the plain or most probable one, and the weight which might fairly be given thereto would not overcome the well-settled reasons of policy for the exclusion of evidence of this character; and when the uncertainty as to the rule to be applied to facts such as are alleged in the pleading mentioned, as indicated by the language of the court in *Stewart* v. *California Medical etc. Assn., supra,* is considered, it appears to us that the act of the corporation in procuring a policy of the character hereinbefore assumed could be the basis for no reasonable inference other than that as a prudent trustee, in view of such uncertainty, it deemed such protection necessary and proper, pending action by the legislature or a final determination of the question by the courts.

[4] The refusal of a witness to produce writings which would not be competent as evidence, or to answer questions not pertinent to the issues of the case, does not constitute contempt; and before a witness can be held to be in contempt it must appear that the evidence sought to be adduced would be competent, relevant and material under such issues; and an order adjudging a witness guilty of contempt for his failure to produce such writings or to answer such questions is invalid, and such an order may be reviewed on *certiorari* (*Ex parte Zeehandelaar,* 71 Cal. 238 [12 Pac. 259]; *Hupp* v. *Superior Court,* 22 Cal. App. 162 [133 Pac. 987]; *Kimball* v. *Superior Court,* 38 Cal. App. 761 [177 Pac. 488]; *Commercial Bank, etc.,* v. *Superior Court,* 192 Cal. 395 [220 Pac. 422].)

In the instant case it does not appear from the order that the court considered the policy to be admissible for any purposes other than those urged by counsel for respondent as hereinbefore stated; and it is our conclusion that as evidence for such purposes, or for any purpose under the issues presented by the pleadings, it would not be admissible; that respondent was, therefore, without jurisdiction to adjudge petitioner guilty of contempt of court; that the judgment should be annulled, and it is so ordered.

Knight, J., and Tyler, P. J., concurred.