## ENELL et al. v. BAPTIST HOSPITAL.
### No. 9624.

Court of Civil Appeals of Texas. Galveston. Dec. 10, 1931.

Rehearing Denied Jan. 7, 1932.

Heidingsfelder & Kahn and R. H. Ward, all of Houston, for appellants.

Fulbright, Crooker & Freeman, Kennerly, Williams, Lee, Hill & Sears, W. B. Bates, Leon Jaworski, and W. H. Blades, all of Houston, for appellee.

GRAVES, J.

Appellants sought damages from the appellee, a corporation, for the negligent act of one of its employees, a nurse, in having administered to Mrs. Enell, then a pay patient at the hospital, certain medicine that in fact had been intended for another patient in an adjoining room, which proximately caused serious injuries to her, including the death of her baby; the proof they offered either conclusively established as facts all that is thus stated, or made issues out of them for the jury.

As additional predicate for the claimed liability, they in substance also alleged: "That appellee is a corporation under the laws of Texas for the purpose of conducting a hospital in the City of Houston, where it has a very large one, with several hundred rooms; while said hospital is under the auspices of the Baptist General Convention of Texas, it is a public hospital, and receives therein as patients not only persons who are members of the Baptist Church, but all other persons as well who are able to pay for their services, whether affiliated with the Baptist Church or not; that said hospital is conducted for profit and gain, and it receives from the conduct of said hospital very large revenues and income; that said hospital is not a charitable institution, but, as aforesaid, is being strictly conducted, operated and run for gain, revenue and profit; that in the conduct of its hospital it maintains a large corps of trained nurses, and for pay it furnishes to patients who are received therein a room, with food, medicine and likewise the services of its trained nurses."

In answer, after a demurrer and a denial, both general, the appellee specially pleaded in avoidance:

"Baptist Hospital is a corporation organized and existing under and by virtue of the laws of the State of Texas, with its principal office and place of business in Houston, Harris County, Texas. Said Baptist Hospital was incorporated and its original charter filed in the office of the Secretary of the State of Texas December 31st, 1910, and an amended charter was filed in said office on January 12, 1922. It was provided in both the original and amended charter that the corporation should exist for a period of fifty (50) years from and after the filing of its original charter. Said corporation has been in existence and in operation at all times since the filing of its original charter, and was in existence and in operation at all times mentioned in plaintiffs' petition, and still is in existence and in operation.

"That said Baptist Hospital was organized and has been and is operated for the purpose as set forth in Section Two (2) of its said amended charter, which section reads in part as follows:

" 'The purposes for which this corporation is formed are purely benevolent, charitable, educational and religious, and not for financial gain, and no financial gain shall ever accrue to any member of this corporation, nor any other person or institution in the conduct of same, but any receipts of this corporation in excess of the expense of purchase, or erection and maintenance of the said institution or institutions provided for herein, shall be applied by the directors to the care of charity patients, and to the equipment and enlargement of said institutions, to carry out the purpose of its organization and operation, as they in their judgment may deem wise. It is

organized to acquire or erect, and to equip, conduct and maintain on the broadest humanitarian principles, a hospital or hospitals, and training school or schools for nurses, to care for the sick and injured and to educate and train persons in the care of the sick and injured, issuing to such persons diplomas upon graduation, and erecting and conducting such hospital or hospitals, school or schools, or other institutions as may be necessary or desirable to carry out all of said purposes, to the end, also, that the souls of men may be healed.'

"That said corporation has never had any capital stock and has never been operated for profit, but is and always has been an institution of purely public charity for the purpose of rendering free hospital services to the sick and injured who are financially unable to pay for the same; that any profits arising from revenues derived from the hospital or other services are put back, or are to be put back when earned, into the channels of the original purposes, and no part of its funds are diverted to private gain or profit; that such funds as are collected from patients do not go to any stockholders, for there are none, nor to accumulate in the coffers of the institution, but are used for the maintenance of the hospital and the furtherance of the announced purposes of its foundation."

At the close of appellants' evidence, the trial court peremptorily instructed a verdict for the appellee, and entered judgment in accord therewith, on its due return; this appeal from that result regularly proceeds.

■ Notwithstanding their quoted averments to that effect, not only did appellants present no evidence—unless the single proven circumstances that Mrs. Enell had been admitted as a patient for pay, as had many others likewise, and that she had so paid appellee a total of $47, constituted such—tending to show the appellee to be operating for profit and gain, or not to be a charitable institution, but, on the contrary, what they did offer undisputedly established in substance all the opposing allegations, supra, of the appellee; indeed, their arguments here proceed upon at least the tacit assumption that this hospital was in fact such a charitable one as it thus claimed to be; at all events, as stated, the evidence required the court to so treat it, unless the uncontroverted fact that it received pay patients and that this one accordingly paid the contracted sum of $47 metamorphosed it as to her.

■ By the great weight of authority, with which this court is entirely satisfied, that fact alone is not to be given any such legal effect; the rule on this particular point is thus stated in 11 Corpus Juris, p. 303, § 9: "Provided a corporation or association can otherwise be classed as a charitable one, the fact that it receives pay from some of the students, in-

mates, patients, or other persons to whom it extends benefits detracts nothing from its character as a purely charitable institution. The original eleemosynary character of the institution is not transformed by this patronage, even if sufficient to relieve it from financial burdens, but the charity as established remains unaffected."

In complete accord are also these Texas cases: Santa Rosa Infirmary et al. v. City of San Antonio (Tex. Com. App.) 259 S. W. 926; Scott et al. v. All Saints Hospital (Tex. Civ. App.) 203 S. W. 146; Barnes v. Providence Sanitarium (Tex. Civ. App.) 229 S. W. 588; Baylor University v. Boyd (Tex. Civ. App.) 18 S.W.(2d) page 700.

Wherefore, regarding its character and status as such a charitable institution established, was the appellee nevertheless liable in damages to Mrs. Enell for the indisputably negligent and injury-inflicting act of its employed nurse in so giving her the wrong medicine—that intended for a different patient—while she was thus receiving the ministrations as a pay patient? Appellants earnestly urge it was, grounding their contention upon the reasoning of the Alabama Supreme Court in Tucker v. Mobile Inf. Ass'n, 191 Ala. 572, 68 So. 4, L. R. A. 1915D, 1167, and upon that of the comparatively few other courts that hold likewise. That opinion was delivered by a divided court, against the strong dissent of one of its members, who said of it:

"There is no decision of any American court, nor opinion of any judge, nor mention by any text-book writer, in accord with the decision of this case, that does not base the opinion on the Rhode Island case cited in this opinion. [Glavin v. Rhode Island Hospital, 12 R. I. 411, 34 Am. Rep. 675]. It has been criticized scores if not hundreds of times, where it has been approved or followed once. * * *

"If the decision of this case is to stand as the law of this state, it cries loudly for the Legislature of Alabama to do what the Legislature of Rhode Island did—put the law of that state in line with that of all the other states by a statute. I ask the question: Should we follow the court of Rhode Island, when the decision of that court was deemed so bad by the people that they rid themselves of it by an express statute?" 191 Ala. 572, 68 So. pages 13 and 14.

The majority of the court in that case held that pleas, merely in this respect setting up due care in selection and retention in service of the nurse, do not show a defense to the cause of action, which, in legal equivalent, was precisely the same state of case as that here declared upon; in so doing, by express acknowledgment, it not only did rest its conclusion mainly upon Glavin v. Rhode Island

Hospital, supra, but also conceded the great weight of authority, to quote its language, "as to the question directly here at issue," to be the other way, both in this country generally and in the state of Texas particularly, as declared in St. Paul's Sanitarium v. Williamson (Tex. Civ. App.) 164 S. W. 36, 39, writ of error denied by the Supreme Court. See, also, 6 Cyc. 975.

It is therefore inept to say that the question this cause presents is one of first impression in Texas; rather has it many times, in principle at least, been passed upon—always to the same purport as in the Williamson Case, supra—as these citations make manifest: Southern Pacific Co. v. Mauldin et al., 19 Tex. Civ. App. 166, 46 S. W. 650; Galveston, H. & S. A. Ry. Co. et al. v. Hanway et. al. (Tex. Civ. App.) 57 S. W. 695; Texas Cent. R. Co. v. Zumwalt, 103 Tex. 603, 132 S. W. 113, 30 L. R. A. (N. S.) 1206; Barnes v. Providence Sanitarium (Tex. Civ. App.) 229 S. W. 588; Baylor University v. Boyd (Tex. Civ. App.) 18 S.W.(2d) 700.

■ At this point, recurrence should be had to the character of appellants' suit. They sought recovery solely on the doctrine of respondeat superior, neither making any allegation nor tendering any evidence of any negligence on the part of the appellee, either with reference to its employment in the first instance of the nurse who so attended Mrs. Enell, or of its subsequent retention of her in its service.

As applied to that sort of case—so laid and made—the declared law of Texas is thus stated by the court in St. Paul v. Williamson, supra: "It will be seen from the cases cited from this state that the rule here is that such institutions, with respect to patients within their walls or under their care, whether the patient be one on charity or one who pays, are liable for the negligence of their physicians, nurses, and servants only when it appears that ordinary care has not been *exercised in their selection and retention;* and that, with respect to injuries inflicted upon third persons and employees by the negligence of their managers, agents, and servants in the conduct of the institution, they come entirely within the rule of respondeat superior."

So that, considering the sole question here presented, and upon which the Rhode Island and Alabama Supreme Courts—as well as several others they cite—held with appellants' contention, to have been in effect foreclosed the other way in Texas, and this court being content to follow our own holdings, further discussion of it here is deemed unnecessary.

These conclusions require an affirmance of the judgment; it will be so ordered.

Affirmed.