### FELAN v. LUCEY.
### No. 12557.

Court of Civil Appeals of Texas.
San Antonio.
May 27, 1953.

Rehearing Denied June 24, 1953.

James L. M. Miller, San Antonio, for appellant.

Moursund, Ball, Moursund & Bergstrom, H. P. Drought, San Antonio, for appellee.

W. O. MURRAY, Chief Justice.

This suit was instituted by John Robert Felan, a minor, acting through his father and next friend, Pat Felan, against Robert E. Lucey, individually and as trustee of the property known as San Fernando Archdiocesan Cemetery, a public burial ground located in San Antonio, Texas.

Plaintiff alleges that Robert E. Lucey is Archbishop of the Diocese of San Antonio of the Roman Catholic Church, and in such capacity and as trustee has title to the San Fernando Archdiocesan Cemetery, and in such capacity, by an instrument called a "Deed of Grant" sells the right of sepulture or burial to the public. On September 29, 1944, Librado Villareal, grandfather of plaintiff, purchased a burial lot for the right of sepulture only, in San Fernando Archdiocesan Cemetery, and there is now buried in said lot Mrs. Esther Villareal, grandmother of plaintiff.

The parties entered into the following stipulation:

"It is hereby stipulated and agreed that the San Fernando Archdiocesan Cemetery, located in Bexar County, Texas, is the cemetery about which the witnesses have heretofore testified, and which is mentioned in the pleadings, and that such cemetery is owned and operated by the Roman Catholic Church with title to said property in the defendant, Robert E. Lucey, as trustee, by reason of his official capacity of Archbishop of the Diocese of San Antonio of said church. It has no capital stock and no one has or can receive any pecuniary profit from the operation thereof; and said cemetery is entirely and exclusively religious, charitable and non-profit.

"The only thing that is sold in connection with the operation of said cemetery is the right of sepulture in said cemetery and all funds derived therefrom are used to maintain said cemetery, and said cemetery is a part of a religious and charitable organization known as the Roman Catholic Church.

"It is further stipulated that the accident mentioned in Plaintiff's Third Amended Original Petition occurred on the premises known as San Fernando Archdiocesan Cem-

etery and which has been referred to in the testimony as San Fernando Cemetery No. 2."

On December 2, 1951, plaintiff, a boy six years of age, accompanied by his mother and other relatives, went to the San Fernando Archdiocesan Cemetery for the purpose of visiting the grave of his grandmother. After plaintiff and his relatives arrived at the grave of his grandmother, his mother picked up some buckets or cans and started toward a water faucet 60 feet away, for the purpose of getting some water in which to place flowers she had brought for the grave of her mother. There were no roads or walks leading from the grave to the water faucet, and it was customary to walk over graves which were maintained on a level with the surrounding surface. Mrs. Felan had arrived at the faucet when she heard cries about 20 feet behind her, and turning around saw plaintiff lying on the ground partly beneath a fallen monument. The fallen monument was that which marked the grave of the body of one Bernice Pecina. Plaintiff testified that just before his injury he was following his mother and fell to the ground near the Pecina monument. In rising he put his hand against the monument and it fell over on him and caused him great injury.

The cause was submitted to a jury upon eleven special issues, all of which were answered favorably to plaintiff, including a finding that he had been injured in the sum of $4,050.

After notice and hearing, the trial judge granted defendant's motion for judgment "non obstante veredicto" and entered judgment that plaintiff take nothing, from which judgment John Felan, acting by and through his next friend, Pat Felan, has prosecuted this appeal.

We are met at the threshold of this appeal with the contention that the San Fernando Archdiocesan Cemetery is owned by the Roman Catholic Church, with title to such property in appellee as trustee, and that it is exclusively a religious, charitable and non-profit institution, and that there is no evidence of any negligence on the part of appellee for which he could be held liable under the circumstances.

It is well-settled law in this State that as a general rule charitable institutions are not liable for the negligence of any of their agents, servants or employees. Southern Methodist University v. Clayton, 142 Tex. 179, 167 S.W.2d 749; Scott v. Wm. M. Rice Institute, Tex.Civ.App., 178 S.W.2d 156.

There are two recognized exceptions to this general rule of law. First, a charitable institution is liable to an employee for injuries proximately caused by the negligence of its officers, vice-principals or agents, but is not liable to beneficiaries of the charity, provided it is not negligent in hiring or keeping the agent whose negligence proximately caused the injuries. Southern Methodist University v. Clayton, supra. The other exception to the general rule appears in Medical & Surgical Memorial Hospital v. Cauthorn, Tex.Civ.App., 229 S.W.2d 932, where it is held that a charitable hospital, when it furnishes equipment for use in the treatment of a patient, owes the nondelegable duty of furnishing equipment which is not defective.

In the case at bar appellant was not an employee of appellee, and appellee did not undertake to furnish appellant any equipment. The duty of inspecting the monuments placed at the various graves was a duty which could be very properly delegated to the superintendent of the cemetery and his assistant. It was certainly not a nondelegable duty. Baptist Memorial Hospital v. Marrable, Tex.Civ.App., 244 S.W.2d 567.

The jury found, in response to Issue No. 5–a, that appellee was negligent in retaining in his employment the superintendent of the cemetery. There is absolutely no evidence to support this finding. One S. F. Gonzalez had been superintendent of the cemetery for fifteen years and there is no evidence that he was incompetent. Even if Gonzalez was negligent in not discovering the dangerous condition of the Bernice Pecina stone (monument), it would not, standing alone, show that he was incompetent. The same thing is true of the assistant to the superintendent, Homer J. Mendez

Baptist Memorial Hospital v. Marrable, Tex.Civ.App., 244 S.W.2d 567.

Appellant complains because the court excluded certain testimony. Appellant undertook to prove that the next day after the accident S. F. Gonzalez, the superintendent of the cemetery, told Pat Felan that one year prior to appellant's accident a little girl was injured by a stone (monument) falling on her leg. There was no attempt to show that this claimed accident happened under the same or similar circumstances, or that the premises on the day appellant was injured were in the same condition as when the little girl was hurt, or that the prior accident happened at the same place of appellant's accident. Under such circumstances the evidence was inadmissible. Glass v. Houston Singing Society, Tex.Civ.App., 192 S.W.2d 300. Furthermore, Gonzalez was not authorized to adjust claims for appellee, and this statement is not shown to have been made by Gonzalez in the scope of his employment. U. S. Torpedo Co. v. Liner, Tex.Civ.App., 300 S.W. 640.

The judgment is affirmed.